IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RICK GUITERREZ                                                                              PLAINTIFF

v.                           CIVIL NO.        09-2149

MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                        DEFENDANT

## MEMORANDUM OPINION

**I.    Procedural Background:**

Pursuant to Titles II and XVI of the Social Security Act, Rick Gutierrez (Plaintiff) protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on December 19, 2006. His applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing, and a hearing was held on December 4, 2008, in Fort Smith, Arkansas, before Administrative Law Judge Larry Shepherd (ALJ). Plaintiff, who was represented by counsel, appeared and testified at the hearing as did Sarah Moore, a vocational expert. On March 24, 2009, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act (Tr. 37-45).

At the time of the ALJ's decision, Plaintiff was 59 years old with a high school diploma, one year of college, and past relevant work experience as an apartment manager and a truck driver (Tr. 10, 22, 113, 118, 131, 132 ).

Plaintiff's request for review by the Appeals Council (AC) was denied on September 28, 2009. (T. 1). On November 24, 2009, Plaintiff filed a complaint with this court nunc pro tunc for

the purpose of obtaining judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g), 1383©. The Commissioner filed his answer along with the administrative record on February 16, 2010. Pursuant to a scheduling order from the court, Plaintiff now files his brief in support of his position.

II.     **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©.  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.    Applicable Facts

The Plaintiff testified that the main problems he was having that caused him to quit work as an apartment manager was pain associated with his back and his arm and that he could no longer "push a refrigerator around or crawl up under a cabinet and change a dishwasher or garbage disposal." (T. 13).  The plaintiff also contended that his right arm had suffered atrophy (T. 14), that he had difficulty with the grip in his right hand and that he suffered from COPD. (T. 15).  The Plaintiff also contended that he had trouble with his right knee and that a lot of times it

would just "buckle" on him. (T. 17).  The Plaintiff contended that, while he was in constant pain he could not afford pain medication and that he would just use street drugs to self medicate. (Id.). The Plaintiff testified that he knew the doctor's had recommended surgery to fuse his back he did not was to do the surgery because they "were going to have to do it from the front, cut me open and take everything out, and I just didn't know if I wanted to do all that." (T. 18).

On February 14, 1994, Plaintiff fell at work when he was carrying a box of parts, stepped over a 4x4 and onto a pipe which rolled out from under him.  He fell onto a concrete floor and complained of injury to his back, right hip, right elbow, and left knee. (T. 184). On that day the Plaintiff had x-rays of his back which showed degenerative disk disease at L4-5 (T. 200) and on February 17, 1994 a CT scan was performed which found that there was "no evidence of surgically significant herniated intervertebral disk disease" and that there was "a slightly bulging disk at L4-5 which is not felt to be of surgical significance." (T. 256).

On February 16, 1994 the Plaintiff was seen by Dr. Kemp who noted that the x-ray of his back showed normal thoracic spine with some degenerative disk disease but not thought to be acute. (T. 299).  The Plaintiff complained of he knee hurting about nine days later (T. 300) but had full range of motion on February 25, 1994 and the Plaintiff was released back to work.  (T. 301.

On February 17, 1994 a CT scan was performed which found that no evidence of surgically significant herniated intervertebral disk disease but a slightly bulging disk at L4-5 which was not felt to be of surgical significance.  There was no evidence of lateral or central canal stenosis and the pedicles were intact. (T. 305).

The Plaintiff began to treat with Dr. Jim Martin at Professional Medical Services in

Tulsa, Oklahoma on November 17, 1994. Dr. Martin is a family practice doctor.  At that time the range of motion on the Plaintiff's back was limited, with flexion to 30 degrees, extension 0 degrees, hip flexion angle 30 degrees, extension angle 0 degrees, and lateral flexion 10 degrees bilaterally.  He also exhibited swelling and tenderness on the left knee and tenderness of the right elbow.  (T. 185).

On March 14, 1995 Plaintiff saw Dr. Boxell. The doctor diagnosed degenerative lumbar disc disease at L4-5 and L5-S1, questionable discogenic low back pain syndrome, painful left knee (etiology as yet undetermined), and questionable mild right ulnar neuropathy. Dr. Boxell recommended orthopedic evaluation of Plaintiff's knee and elbow with EMG and nerve conduction studies to determine whether he had neuropathy.  Dr. Boxell also noted that the Plaintiff smoked two to three packs of cigarettes per day and that he had been a heavy smoker for many years. (T. 237- 239).

A nerve conduction test was performed on September 18, 1995 which found evidence of ulnar neuropathy at the right elbow and a prominent slowing of the right ulnar nerve. (T. 190).

On November 6, 1995 a discogram was performed at St. John Medical Center in Tulsa, Oklahoma. (T. 250-253).

On November 14, 1995 the Plaintiff was seen by Dr. Boxell to discuss the discogram test and Dr. Boxell discussed a multilevel fusion.  Dr. Boxell also " chastised " the Plaintiff for using a wheelchair and informed him that if he was to get better he would have to rid himself of using a wheelchair or canes. (T. 246).

On February 22, 2006 Plaintiff was seen by Dr. Young.  He noted that Plaintiff had a long history of hypertension, diabetes, gout, anxiety, and depression and that he was a heavy smoker.

His blood sugar was not well controlled, and he became short of breath easily. A few days later the doctor indicated that Plaintiff's labs showed his blood sugar was out of control, and he recommended diet and exercise to lose weight. (T. 236).

On March 4, 1996 Dr. Boxell noted that the Plaintiff did not want to proceed to surgery. He noted that the Plaintiff had markedly restricted range of motion with "rather poor effort on his part" and that he believe that "there are some psychological overlay problems in this situation." (T. 247).

From June 24, 2006, through June 26, 2006 Plaintiff was hospitalized at Mercy Hospital, due to significant shortness of breath. The Final diagnosis was acute exacerbation of COPD, secondary to acute bacterial bronchitis. The records also note that the Plaintiff had a 40 year history of heavy smoking. (T. 331-332)

On September 18, 1996 the Plaintiff saw Dr. Boxell still complaining of pain. The doctor noted that the Plaintiff was still in a wheelchair and that he continued to smoke upwards of 2 1/2 packs of cigarettes per day. (T. 248).

On December 12, 1996 Plaintiff saw Dr. Boxell and represented that he is now ready to pursue surgery. Dr. Boxell told him that if he could stop smoking and lose weight he will consider him for surgery. (T. 243).

On February 18, 1997 the Plaintiff again saw Dr. Boxell and represented that he had stopped smoking and that he had lost some weight as ordered. Dr. Boxell noted that he would schedule the Plaintiff for surgery in early April. (T. 242).

There is no evidence that the Plaintiff obtained the fusion surgery. There was a note in the record dated April 1, 1997 which appears to state "Spoke w/Dale Picklent @ ins. Co. Request

still denied, under investigation will probably go to court first before approval per Dale." Signed SB.

On May 19, 1997 the Plaintiff was seen by Dr. James Odor who noted that the Plaintiff had very "magnified" pain behaviors. The Plaintiff represented to Dr. Odor that he could not get out of his wheelchair without assistance from his wife but the doctor subsequently observed the Plaintiff in his parking lot after the examination and the Plaintiff got up from the wheelchair without his wife's assistance. (T. 205). The Plaintiff also represented to Dr. Odor that he did not smoke. (T. 209).

The Plaintiff continued to be seen by Dr. Martin with the last report dated March 10, 1999. At that time the range of motion on the Plaintiff's back revealed flexion to 60 degrees, extension 5 degrees, lateral flexion 10 degrees bilaterally. The Plaintiff still exhibited swelling and tenderness of the left knee and tenderness of the right elbow with evidence of weakness of grasping with his right hand. (T. 181).

On May 2, 2007 the Plaintiff was seen by Dr. Ted Honghiran, M.D. for a consultive examination. Dr. Honghiran's impression was that the Plaintiff had a history of chronic low back pain most likely from degenerative disc disease of the lumbar spine and that it would be difficult for him to return to his truck driving occupation. (T. 212-213).

On June 19, 2007 state agency physician Jerry Mann, M.D. performed a physical residual function assessment. Dr. Mann reviewed the medical evidence, and opined that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand and/or walk six hours in an eight-hour workday; and sit six hours in an eight-hour work day (Tr. 259). He noted that Plaintiff had decreased grip strength in the right upper extremity due to ulnar nerve neuritis, but could

engage in unlimited handling, fingering, and feeling (Tr. 259, 261). Dr. Mann also opined that Plaintiff was occasionally limited in his ability to perform overhead reaching with his right upper extremity (Tr. 261).

On July 24, 2007 Dr. Kralik performed a consultative psychological evaluation. She diagnosed polysubstance abuse/dependence and adult antisocial behavior (rule out antisocial personality disorder) and rated Plaintiff's global assessment of functioning (GAF) as 51-60. Dr. Kralick noted that the Plaintiff was not on any prescribed pain medication but that he choose to use street drugs to self medicate. (T. 269).  The Plaintiff also admitted that he has been arrested several times and has two felony convictions, one for fraud and one for forgery.  The fraud charge was for receiving workman's compensation benefits while he was working full time. The plaintiff also admitted to still smoking one pack of cigarettes daily, (T. 270). Dr. Kralik found that the Plaintiff's capacity to carry out activities of daily living was adequate for occupational purposes, (T. 272) that 1) his capacity to communicate and interact socially, 2) capacity to communicate, 3) capacity to copy, 4) capacity to sustain concentration, 5) capacity to sustain persistence and 6 his capacity to complete work like task to be adequate for occupational purposes. (T. 273).

On August 10, 2007 the Plaintiff was seen by Kay Cogbill who completed a Psychiatric Review Technique form.  Ms. Cogbill found that the Plaintiff had only a mild degree of limitation in regards to 1) Restriction of Activities of Daily Living, 2) Difficulties in Maintaining Social Functioning and 3) Difficulties in Maintaining Concentration, Persistence, or Pace.  She found that the Plaintiff had no degree of limitation in Episodes of Decompensation, Each of Extended Duration. (T. 285).

On December 21, 2007 the Plaintiff presented to Sparks Regional Medical Center with complaints of hematuria or blood in the urine (Tr. 368). However, medical personnel noted that Plaintiff's back was non-tender, and exhibited a normal range of motion with normal alignment (Tr. 355). Plaintiff also enjoyed a normal range of motion in his extremities with normal tone, no swelling, and no tenderness (Tr. 355). The medical records also note that the Plaintiff's "Arrival Mode" was "walking". (T. 368).

IV.     **Discussion**:

The ALJ found that Plaintiff's degenerative disc disease, diabetes, osteoarthritis, and nerve damage in the right arm were severe impairments within the meaning of the Social Security regulations, but that none of these impairments were severe enough to meet or equal a listing (Tr. 39-40; Finding Nos. 3 and 4). However, the ALJ also determined that Plaintiff's depression and COPD were non-severe impairments (Tr. 39) and the Plaintiff contends this was error. (ECF No. 8, p. 9)

An impairment is severe only if it has " 'more than a minimal effect on the claimant's ability to work.' " *See Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir.1992)(quoting *Hudson v. Bowen*, 870 F.2d 1392, 1396 (8th Cir.1989)).

**Depression:**

As for Plaintiff's allegations of depression, the ALJ properly found that the medical evidence did not substantiate anything more than a non-severe impairment resulting in only mild limitations of activities of daily living; mild difficulties in maintaining social functioning; mild deficiencies of concentration, persistence, or pace; and no evidence of any episodes of decompensation (Tr. 40). See 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (in applying the

special psychiatric technique, if the Agency rates the degree of limitations in the first three functional areas as "none" or "mild" and "none" in the fourth area, the Agency will generally conclude that the impairment is not severe). Plaintiff states that it was "certainly understandable" that he would allege depression on his application because his doctors had given him this diagnosis. (T. 236). However, the diagnosis of a condition does not equate to a disability. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir 2003)(finding that a diagnosis alone has minor significance, in that the plaintiff needed to also show functional limitations).

As the ALJ appropriately noted, Kathleen Kralik, Ph.D., examined Plaintiff on July 24, 2007, and found no evidence of depression (Tr. 40, 269-274). She diagnosed Plaintiff with polysubstance abuse/dependence and adult anti-social behavior (Tr. 272). Although Dr. Kralik found that Plaintiff was somewhat or intermittently impaired in his ability to attend and sustain concentration, sustain persistence in completing tasks, and complete work-like tasks in an acceptable time frame (Tr. 273), she rated his capacity to communicate and interact in a socially adequate manner, and in an intelligible and effective manner adequate for occupational purposes (Tr. 273). Dr. Kralik observed that Plaintiff had no difficulties with processing or comprehending instructions (Tr. 273). She also rated his ability to cope with typical mental/cognitive demands of work-like tasks as adequate for occupational purposes (Tr. 273). Additionally, Dr. Kralik noted that Plaintiff denied ever having mental health treatment (Tr. 269). *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (plaintiff had not sought, or been referred for, professional mental health treatment).

State agency medical consultant Kay Cogbill also reviewed the medical evidence, and

completed a Psychiatric Review Technique Form (PRTF) (Tr. 275-288).   On August 10, 2007 the Plaintiff was seen by Kay Cogbill who completed a Psychiatric Review Technique form.  Ms. Cogbill found that the Plaintiff had only a mild degree of limitation in regards to 1) Restriction of Activities of Daily Living, 2) Difficulties in Maintaining Social Functioning and 3) Difficulties in Maintaining Concentration, Persistence, or Pace.  She found that the Plaintiff had no degree of limitation in Episodes of Decompensation, Each of Extended Duration. (T. 285). Importantly, as the ALJ pointed out, Ms. Cogbill also noted that Plaintiff had polysubstance abuse, but found no evidence of depression (Tr. 40, 287). Indeed, Ms. Cogbill also found that Plaintiff's depression was a non-severe impairment (Tr. 275).

There also is no history of treatment for the Plaintiff's depression.  The lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).

The record supports that the ALJ's determination that Plaintiff's depression was non-severe.

**COPD:**

In February 2006, Walter Young, M.D., saw Plaintiff for a routine follow-up examination, and noted that Plaintiff got only "a little short of breath." (Tr. 236). He also noted that Plaintiff was a nicotine-addicted heavy smoker, but that his lungs were clear but he did have significant COPD (Tr. 236). An x-ray of Plaintiff's chest taken on February 23, 2006, demonstrated minimally hyper-expanded lungs (Tr. 337). On June 24, 2006, Plaintiff went to the hospital complaining of severe shortness of breath, a heavy cough, and heavy sputum (Tr. 331).

A chest x-ray showed hyper-expanded lungs compatible with COPD (Tr. 333).

Dr. Young diagnosed Plaintiff with, among other things, acute exacerbation of COPD, secondary to acute bacterial bronchitis (Tr. 331). Plaintiff responded well after a two-day course of treatment, and his wheezing resolved. The Plaintiff was discharged to be on Advair Diskus 250/50 and Spiriva which the Plaintiff acknowledged was helpful. Dr. Young also noted that "[L]ongterm prognosis is guarded because at this point in time (Plaintiff) is not willing to stop smoking." (Tr. 332). This refusal to stop smoking was particularly noteworthy to the ALJ. (T. 40). On June 30, 2006, Dr. Young examined Plaintiff after a hospital stay, and noted that, although Plaintiff had significant COPD, Plaintiff's lungs were clear, he had begun using an Advair inhaler and Albuterol, and Plaintiff reported that he felt a lot better (Tr. 235). Additionally, a spirometry report dated May 21, 2007, reveals that Plaintiff had only a mild, restrictive ventilatory defect (Tr. 231). Thus, the medical evidence fails to supports Plaintiff's contention that his COPD is a severe impairment.

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *(See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001)), including failing to take prescription medications, Riggins v. Apfel, 177 F.3d 689 at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997). *Choate v. Barnhart,* 457 F.3d 865, 872 (C.A.8 (Mo.),2006). Plaintiff was warned about smoking and told to quit in 1996 by Dr. Boxell and again in 2006 by Dr. Young (T. 332) but never did. The Plaintiff acknowledge that the only source of his COPD was "too many years of smoking". (T. 15).

**Left Knee:**

Plaintiff also argues that he "clearly" had internal derangement of his left knee, but that the ALJ did not mention this in his step-two finding. See Pl.'s Br. at 10. The Plaintiff testified that "a lot of times I'll be walking or trying to walk , and it'll buckle, and I'll – sometimes I'll fall and sometimes I won't." (T. 17).

On August 24, 1995 the Plaintiff was seen by Dr. James C. Slater who formed the impression that the Plaintiff suffered from 1) Ulnar cubital tunnel syndrome, left elbow and 2) Internal derangement, left knee with possible block to motion. (T. 324). This was acknowledged by the ALJ in his opinion. (T. 42). Internal Derangement of the knee is a "partial dislocation of the knee marked by great pain and spasm of the muscle." (See Dorland's Illustrated Medical Dictionary, 26th Edition) An x-ray dated March 24, 2005, showed probable joint effusion, and only minimal hypertrophic spurring (Tr. 338). Additionally, Ted Honighran, M.D., performed a consultative orthopaedic examination of Plaintiff on May 2, 2007 (Tr. 212-213). Dr. Honighran observed that Plaintiff could walk fairly normally with no limp (Tr. 212). Plaintiff had a negative straight-leg-raising test in both legs, and normal reflex and sensation (Tr. 212). Further, records from the emergency room dated December 21, 2007, show that Plaintiff enjoyed a normal range of motion in his extremities with normal tone, no swelling, and no tenderness (Tr. 355) and that the Plaintiff's "arrival mode" was noted as "walking". (T. 354).

The ALJ noted that the Plaintiff's medical records for 2002 and 2003 show no complaint or treatment for the Plaintiff's back or knee and the Plaintiff did not seek medical treatment for his knee until March 2005. (T. 43) That x-ray, as noted above was not remarkable. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or

may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

An impairment is severe only if it has " 'more than a minimal effect on the claimant's ability to work.' " *See Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir.1992)(quoting *Hudson v. Bowen*, 870 F.2d 1392, 1396 (8th Cir.1989)). It is clear from a reading of the ALJ's opinion that the ALJ rightly concluded that the Plaintiff's knee problem was not severe.

**Credibility:**

Dr. Boxell saw the Plaintiff on March 14, 1995 and noted that as to the Plaintiff's back he had "mild mechanical dysfunction on range of motion testing" (T. 238) and that the Plaintiff had returned to his work as a truck driver after his accident but had been laid off because the "company apparently went out of business, not because of health problems." (T. 237)

On the Defendant's application for benefits he stated that he had never been convicted of a felony (T. 91) but the Plaintiff subsequently admitted to the consulting psychologist that he has been arrested several times and has two felony convictions, one for fraud and one for forgery. The fraud charge was for receiving workman's compensation benefits while he was working full time. (T. 270).

On May 19, 1997 the Plaintiff was seen by Dr. James Odor who noted that the Plaintiff had very "magnified" pain behaviors. The Plaintiff represented to Dr. Odor that he could not get out of his wheelchair without assistance from his wife but the doctor subsequently observed the Plaintiff in his parking lot after the examination and the Plaintiff got up from the wheelchair without his wife's assistance. (T. 205). The Plaintiff also represented to Dr. Odor that he did

not smoke. (T. 209).

The ALJ also noted that the Plaintiff worked for more than 20 employers between 1994 and December 2006 and that factor was inconsistent with the Plaintiff alleged severity of his impairments. (T. 43).

**RFC:**

The ALJ determined that plaintiff retained the RFC to perform a limited range of light work with occasional reaching overhead with the right upper extremity and frequent handling and figuring with his right upper extremity. (T. 41). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Light work requires occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, standing and/or walking for 6 hours per day or sitting for 6 hours per day while operating hand and foot controls, occasional stooping, and the use of arms and hands to grasp, hold, and turn objects. Social Security Ruling 83-10**.**

The Plaintiff's allegations regarding significant disc degeneration in his lumbosacral spine with accompanying radiculopathy into his lower extremities, is not supported by the medical evidence or the Plaintiff's behavior.

A review of the medical evidence does indicate that Plaintiff was suffering from degenerative disk/joint disease of the lumbar spine. However, it does not demonstrate compromise of a nerve root or of the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication as described in Listings 1.04A, B, and C. Physical exams have revealed only pain and limited range of motion. No gait abnormalities have been noted and Plaintiff has not been prescribed any assistive devices that would indicate a problem with ambulation.

As noted previously, Dr. Honighran performed a consultative orthopaedic examination of Plaintiff in May 2007, and he observed that Plaintiff could walk fairly normally with no limp (Tr. 212). Plaintiff had a negative straight-leg-raising test in both legs, and normal reflex and sensation (Tr. 212). A lumbar x-ray taken of Plaintiff's spine on June 6, 2007, revealed only moderate disc space narrowing at L3-4, L4-5, and L5-S1 levels with degenerative end plate changes and spur formation (Tr. 257).

Additionally, the ALJ considered the opinion of state agency physician Jerry Mann, M.D. (Tr. 44). Dr. Mann reviewed the medical evidence, and opined that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand and/or walk six hours in an eight-hour workday; and sit six hours in an eight-hour work day (Tr. 259). He noted that Plaintiff had decreased grip strength in the right upper extremity due to ulnar nerve neuritis, but could engage in unlimited handling, fingering, and feeling (Tr. 259, 261). Dr. Mann also opined that Plaintiff was

occasionally limited in his ability to perform overhead reaching with his right upper extremity (Tr. 261). The ALJ also determined that Plaintiff had the RFC to perform light work, subject to an ability to only occasionally reach overhead with his right dominant upper extremity, and frequently handle and finger with his right dominant upper extremity (Tr. 41, Finding No. 5). An ALJ is to treat a determination by a physician from such a state agency as "expert opinion evidence" and give it "appropriate weight." *See Jones ex. rel. Morris v. Barnhart*, 315 F.3d 974, 978 (8th Cir. 2003); SSR 96-6p3 (State agency medical consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act).

Plaintiff further contends that his COPD would require that he avoid sources of respiratory irritation such as chemicals, fumes, and smoke. (See Pl.'s Br. at 13). However, as noted previously, the medical evidence supports the ALJ's assessment that Plaintiff's COPD was a non-severe impairment because it did not cause more than minimal limitation in his ability to perform basic work activities (Tr. 39). In addition the Plaintiff refusal to quit smoking belies his objection to being around chemicals, fumes and smoke. *( See Nichols v. Commissioner of Social Sec*. 2010 WL 5178069, 3 (W.D.Mich.) (W.D.Mich.,2010). Thus, the ALJ properly chose not to include limitations from COPD in determining Plaintiff's RFC.

The VE testified that the job of apartment manager was classified as "light, skilled work at an SVP level 5." (T. 22). The hypothetical that the ALJ put to the VE was for the VE to assume an individual of advance age, at least a high school education, can lift and carry 20 pounds occasionally and ten pounds frequently can sit for about six hours during an eight-hour workday and can stand and walk for about six hours during an eight-hour workday and can

occasionally reach overhead with his right upper extremity and can frequently handle and finger with the right upper extremity. Based upon that assumption the VE stated that the Plaintiff past work as apartment manager would be available. (T. 23).

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this January 18, 2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE